UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN W. HOUSER,

Plaintiff,

v.

CHERYL STRANGE, *et al.*,

Defendants.

CASE NO. 3:26-cv-05988-JHC-GJL

ORDER DECLINING SERVICE AND GRANTING LEAVE TO AMEND

This action has been referred to United States Magistrate Judge Grady J. Leupold. Plaintiff Kevin Houser, proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's Complaint (Dkt. 6) under 28 U.S.C. § 1915A, the Court **DECLINES** to serve the Complaint and, instead, **GRANTS** Plaintiff leave to file an amended pleading by **December 21, 2026**, to cure the deficiencies identified herein.

## I. BACKGROUND

Plaintiff, an inmate currently confined at Stafford Creek Corrections Center ("SCCC"), initiated § 1983 action concerning the conditions of confinement at that facility. Dkt. 6. Plaintiff names seven Defendants in his Complaint: Cheryl Strange (Washington State Department of

Corrections ("DOC") Secretary), Eric L. Jackson (DOC Deputy Assistant Secretary), Karin Arnold (SCCC Superintendent), Corey Evans (Correctional Officer), Greg Jones (Custody Unit Supervisor), Jody Wright (Resolution Specialist), and Christopher Hatch (Religious Coordinator). *Id.* at 3–5. Rather than setting forth the substance of his claims in the Complaint itself, Plaintiff refers the Court to his separately filed "Memorandum of Points and Authorities." *Id.* at 6–11 (referencing Dkt. 6-1). In that Memorandum, Plaintiff identifies eleven causes of action, variously alleging violations of his First Amendment rights, violations of DOC policies, conspiracy, and "superior liability." Dkt. 6-1 at 4–7. Although the legal and factual basis of his discrete claims lack clarity, it appears Plaintiff's claims generally concern his ability to display a hand-drawn religious image (specifically, a "sigil of Baphomet") in his living quarters. *Id.* at 7–11, 13, 36.

As relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 129–32. In addition, Plaintiff filed a Motion for Temporary Restraining Order, Dkt. 3, which the Court denied over his objections. Dkt. 5 (Report and Recommendation); Dkt. 8 (Objections); Dkt. 9 (Order).

## II. SCREENING STANDARD

Under the Prison Litigation Reform Act of 1996, the Court must screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §1915(e)(2)(B); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Dismissal on these grounds constitutes a "strike" under 28 U.S.C. § 1915(g).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). Even *pro se* pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A plaintiff must set forth specific, plausible facts to support their claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–83 (2009).

## III. DISCUSSION

Upon review, Plaintiff's Complaint contains several deficiencies which render it inappropriate for service at this time. These deficiencies and instructions on how they may be cured are discussed below.

### A. Unclear Pleading—Rule 8 of the Federal Rules of Civil Procedure

First, Plaintiff's Complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). While lengthy pleadings do not automatically violate Rule 8's requirement to provide a short, plain statement demonstrating entitlement to relief, pleadings that are "argumentative, prolix, replete with redundancy, [or] largely irrelevant" do not comply with the Rule. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

The Court previously identified some of the deficiencies concerning Plaintiff's unclear pleadings:

> First, Plaintiff has not submitted his claims on the Court's required form and instead attempts to set forth his claims by incorporating through reference a lengthy Memorandum. *See* Dkts. [6], [6-1]. Plaintiff does not provide the "short and plain statement" of his claims as required by Federal Rule of Civil Procedure 8(a). In his Memorandum, Plaintiff identifies eleven purported causes of action, and several do not clearly identify a constitutional or federal statutory right allegedly violated as required state a claim under 42 U.S.C. § 1983. Dkt. [6-1] at 4–7.
>
> Specifically, Plaintiff's second and third causes of action generally allege "official misconduct" and violations of Department of Corrections ("DOC") policies. *See* Dkt. [6-1] at 4. Violations of prison policies, standing alone, do not establish a claim under 42 U.S.C. § 1983. *See Cotton v. Cnty. of Santa Barbara*, No. CV 03-7652 PSG (RZX), 2010 WL 11508619, at *2 (C.D. Cal. Apr. 19, 2010), *aff'd sub nom. Cotton v. Martinez*, 475 F. App'x 207 (9th Cir. 2012).
>
> Additionally, within the lengthy narrative of his claims, Plaintiff discusses potential claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *see* Dkt. [6-1] at 28–39, and refers to the deprivation of property without a post-deprivation hearing, suggesting a potential due process theory, *id.* at 34. These theories are not clearly pleaded as claims for relief, and Plaintiff's references to them inject uncertainty into his pleading, which renders the Complaint inappropriate for service at this time. *See Henderson v. Scott*, 2005 WL 1335220, *1 (E.D. Cal. May 4, 2005) (noting it is the plaintiff's "responsibility to make each claim clear and provide only a short statement of facts supporting [each] claim" and not for the Court to "glean what claims for relief might lay hidden in the narration provided").

Dkt. 5 at 5–6. The Court further observes that Plaintiff includes substantial legal argument in his Memorandum and appears to attach evidence to support his claims. It thus appears that Plaintiff is attempting to both argue and prove his claims in his initial pleading. It is unnecessary to

accomplish either of these tasks in an initial pleading, and Plaintiff's attempts to do so detract significantly from the clarity of his claims.

The purpose of an initial pleading is to clearly, directly, and concisely identify Plaintiff's claims for relief and the factual basis upon which those claims rest. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (Fed. R. Civ. P. 8 requires "sufficient allegations to put defendants fairly on notice of the claims against them"). Thus, in any amended pleading, Plaintiff must avoid including unnecessary legal argument and evidentiary support that detracts from the clarity of his claims. Plaintiff should instead focus any amended complaint on clearly, directly, and concisely identifying his claims for relief. Plaintiff must also avoid a lengthy, unified factual narrative for all of his claims and should instead directly identify the particular factual basis upon which each claim against each defendant rests. *See Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026) (upholding dismissal of impermissible "shotgun" style pleading, noting "[i]t is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts").

**B. Defendant Deficiencies**

The Memorandum referenced in Plaintiff's Complaint also contains numerous deficiencies in establishing the Defendants' liability. To state a viable § 1983 against an individual defendant, a plaintiff must allege facts showing how the defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold*, 637 F.2d at 1355. These allegations must be supported by specific facts and circumstances demonstrating each defendant's personal involvement. Sweeping and conclusory allegations against a defendant are insufficient to state a claim for relief. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Furthermore, a claim may not be brought on a *respondeat superior* theory of liability, meaning that it is not enough to allege that a supervisor is vicariously liable for the acts of his or her

subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658, 691 (1978).

Plaintiff alleges the following Defendants are liable under a theory of "superior" liability: Defendants Arnold, Jackson, and Strange. Dkt. 6-1 at 6–7. But *respondeat superior* liability is not a viable legal theory for a § 1983 claim. As a result, Plaintiff's § 1983 claims against these Defendants are deficient. In any amended pleadings, Plaintiff should only name an individual as a Defendant if he can put forth sufficient facts demonstrating their personal participation in causing his alleged constitutional injuries. Sweeping allegations against all Defendants will not suffice. *See Gibson*, 165 F.4th at 1288–91. Instead, Plaintiff must identify the way in which the actions or inactions of each Defendant caused him a specific constitutional injury.

Plaintiff further relies on the existence of a conspiracy to establish liability of various Defendants, including Defendants Wright, Hatch, Arnold, Jackson, and Strange:

> Plaintiff's sixth through eleventh causes of action refer generally to the existence of a "conspiracy" between several Defendants. Dkt. [6-1] at 5–7. These claims are deficient because Plaintiff fails to clearly or consistently identify the legal violation that was the object of the alleged conspiracy or facts demonstrating an agreement among Defendants. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").
>
> Plaintiff's ostensive "conspiracy" claims are further deficient because they allege conspiracy between individuals employed within the same legal entity. Such claims necessarily proceed under the "intracorporate-conspiracy" doctrine, *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017), the applicability of which is unsettled within the Ninth Circuit. Given the unsettled state of the law in this area, qualified immunity blocks Plaintiff's various conspiracy claims. *See Manansingh v. United States*, No. 21-16192, 2023 WL 7295184, at *2 (9th Cir. Nov. 6, 2023) (affirming dismissal of § 1985 conspiracy claim on qualified immunity grounds because the applicability of the intracorporate-conspiracy doctrine is unsettled); *Lobato v. Las Vegas Metro. Police Dep't*, No. 22-16440, 2023 WL 6620306, at *2 (9th Cir. Oct. 11, 2023) (concluding the same with respect to § 1983 conspiracy claim); *see also White v. King Cnty. Sheriff's Off.*, No. 2:23-CV-01761-JHC, 2026 WL 523889, at *11 (W.D. Wash. Feb 25, 2026), *cert. denied*, 2026 WL 925608 (W.D. Wash. Apr. 6, 2026) (concluding intracorporate-conspiracy doctrine "blocked" a § 1985 conspiracy claim).

Dkt. 5 at 6–7. Based on the above, Plaintiff's ostensive conspiracy claims are deficient in a manner not likely to be cured through amendment. Thus, Plaintiff should not include a conspiracy claim in any amended pleading and he should not base his claims against any Defendant on this theory of liability.

**C. Legitimate Penological Interest**

Finally, Plaintiff's Memorandum referenced in his Complaint appears to challenge three related restrictions concerning a religious image that Plaintiff hand-drew and placed outward facing in his cell window. Dkt. 6-1 at 7–11, 13, 36. To the extent Plaintiff alleges these restrictions violated his First Amendment rights, he must plausibly allege facts sufficient to show that the challenged restriction was not reasonably related to a legitimate penological interest.

Explained further, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (a prisoner's First Amendment right to freely exercise his religion "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security"). In other words, an action that restricts a prisoner's First Amendment rights remains valid so long as it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). A similar requirement applies to actions allegedly taken in retaliation for conduct protected under the First Amendment. *Rhodes v. Robinson,* 408 F.3d 559, 566 (9th Cir. 2005) (a viable claim of First Amendment retaliation must plausibly allege facts showing that the challenged action "did not advance a legitimate correctional goal").

In determining whether a challenged action is reasonably related to a legitimate penological interest, courts considers the following factors: (1) whether there is a valid, rational connection between the restrictive action and the penological interest used to justify the restriction; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the prisoner's requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the restriction which could be implemented at a minimal cost to legitimate penological interests. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Review of these factors "is highly deferential, and it often requires [the court] to uphold rules that, in contexts not involving prisons, would plainly violate the First Amendment." *Prison Legal News v. Ryan*, 39 F.4th 1121, 1128 (9th Cir. 2022).

To summarize, Plaintiff must clearly, directly, and concisely identify each claim for relief and the specific factual basis supporting that claim against each Defendant. Plaintiff must avoid including lengthy factual narratives, unnecessary legal argument, and evidentiary material that detracts from the clarity of his claims. For each claim, Plaintiff must clearly identify the constitutional right allegedly violated, the Defendant personally responsible for the alleged violation, and the specific personal conduct giving rise to that Defendant's liability. Plaintiff should not name Defendants based solely on their supervisory positions or assert claims premised on an alleged conspiracy. Finally, to the extent Plaintiff challenges restrictions on his First Amendment rights, he must allege facts plausibly demonstrating that the challenged restrictions were not reasonably related to legitimate penological interests.

## IV. CONCLUSION AND INSTRUCTIONS

Because of the deficiencies described above, the Court **DECLINES** to direct service of the Complaint. Instead, Plaintiff is **GRANTED LEAVE** to file an amended complaint correcting the above-stated deficiencies on or before **December 21, 2026.**

The Court **WILL** screen the amended complaint to determine if service upon any defendant is appropriate. The amended complaint **MUST** contain a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief **MUST** be simple, concise, and direct.

The amended complaint **MUST** be filed under the same case number as this one and will operate as a **complete substitute** for Plaintiff's prior pleadings. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). The amended complaint **MUST** be prepared using the court-provided form, Local Rules W.D. Wash., LCR 103, and **SHALL** be limited to no more than **TWENTY PAGES** absent leave of court. The amended complaint **MUST** be legibly rewritten or retyped in its entirety. This means, the amended complaint **MUST** be an original document, not a compilation of previously submitted materials, and it **MAY NOT** incorporate *any part* of the prior pleadings by reference.

Finally, failure to file an amended complaint according to these instructions **MAY** result in a **recommendation** this action be **dismissed**.

Dated this 19th day of November, 2026.

Grady J. Leupold
United States Magistrate Judge